IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

CURTIS RAY SMITH,                          )
                                           )
          Petitioner,                      )
                                           )
v.                                         )          CIVIL ACTION NO. 1:02-CV-1219-F
                                           )                            WO
                                           )
J. C. GILES, *et al.*,                     )
                                           )
          Respondents.                     )

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I.  INTRODUCTION AND PROCEDURAL HISTORY**

This cause is before the court on a 28 U.S.C. § 2254 petition for habeas corpus relief

filed by Curtis Ray Smith ("Smith"), a state inmate, on November 4, 2002.  In this petition,

Smith challenges a conviction for aggravated stalking entered against him by the Circuit

Court of Houston County, Alabama on April 16, 1999.  The trial court sentenced Smith as

a habitual offender to life imprisonment for this conviction.

Smith filed a direct appeal of his aggravated stalking conviction in which he raised

the following claims for relief:  (1) double jeopardy prohibited the State from charging him

with aggravated stalking; (2) the trial court erred in its denial of his motion for new trial and

motion for judgment of acquittal in light of the State's failure to present evidence as to

petitioner's knowledge of a restraining order; (3) the trial court erred in its refusal to

instruct the jury on the lesser included offenses of menacing and harassment; and (4) the trial court violated his right to a fair trial by denying him the opportunity to question a material witness, the victim, on information relevant to her credibility.  On January 12, 2001, the Alabama Court of Criminal Appeals affirmed Smith's aggravated stalking conviction in a memorandum opinion.  *See Respondents' Exhibit A-2 - Memorandum Opinion on Direct Appeal.*  In detailing some of the evidence presented against Smith, the appellate court stated that:

> The evidence at trial tended to show the following.  In February of 1997, Grace McLaughlin, Smith's girlfriend, forced Smith to move out of her apartment in Dothan, Alabama.  The two had been living together for approximately five years after having met in a drug counseling program.  After moving out, Smith regularly went to McLaughlin's apartment late at night and knocked on the door.  McLaughlin repeatedly told Smith to stay away or she would call the police.  Smith's late night visits continued, prompting McLaughlin to file a complaint with the Dothan Police Department.  During this period, Smith repeatedly telephoned McLaughlin at her place of employment, despite being told by McLaughlin and her co-workers that she did not want to speak to him.  Sometime during this period, Smith forged McLaughlin's name on a check and withdrew $100 from her bank account without her permission.  On March 21, 1997, Smith climbed onto McLaughlin's balcony in the middle of the night and tapped on the glass door.  On March 29, 1997, Smith forced his way into McLaughlin's apartment and refused to leave.  When McLaughlin attempted to telephone the police, Smith ripped the telephone cord out of the wall.  Smith threw McLaughlin on the bed and held her down, bruising her arms.  Smith threatened McLaughlin with a kitchen knife to keep her from leaving the apartment.  Smith kept McLaughlin in the apartment overnight, allowing her to leave for work the next morning.
>   On April 1, 1997, Smith again climbed onto McLaughlin's balcony and tapped on the sliding glass door, begging to be let inside.  McLaughlin called the Dothan police and Smith was arrested.  In the period between

Smith's arrest and appearance in municipal court, he repeatedly telephoned McLaughlin at work and left notes on her car.  Several days before Smith was to appear in municipal court to answer the charges from his April 1, 1997 arrest, he went to McLaughlin's place of employment and waited for her to come outside.

On April 3, 1997, Smith was convicted of harassment in Dothan municipal court for his behavior at McLaughlin's apartment on March 29, 1997.  On May 8, 1997, Smith was convicted of menacing for the March 29, 1997 incident, and for harassing communications for a telephone call he placed to McLaughlin on April 1, 1997.  Smith was ordered to serve 130 days in the city jail, and was placed on probation for two years.  One of the terms of Smith's probation was to refrain from any contact with McLaughlin.  Nevertheless, Smith sent McLaughlin numerous letters from jail, some of which were hostile and threatening.

Upon release from jail, Smith left notes on McLaughlin's car and apartment door.  On September 11, 1997, Smith confronted McLaughlin at a local gas station and threatened to kill her if she "put him back in jail."  On October 3, 1997, Smith was waiting for McLaughlin outside her apartment when she returned home from work.  McLaughlin told Smith that she had to make a telephone call from a nearby pay telephone.  Smith, unwilling to allow McLaughlin to go by herself, went with her.  McLaughlin used the pay telephone to send a prearranged signal to a co-worker's pager, alerting the co-worker to summon the police to McLaughlin's apartment.  When McLaughlin and Smith returned to the apartment, police officers were waiting in the parking lot.  Smith attempted to flee but was apprehended.  He was charged with harassment and convicted in municipal court on November 7, 1997.

In February of 1998, the Houston County grand jury returned an indictment charging Smith with aggravated stalking.[1]  An arrest warrant was

---

[1]The indictment charges that "Curtis Ray Smith . . . in violation of a court order or injunction did intentionally and repeatedly follow or harass another person, to-wit: Martha Grace McLaughlin, and make a credible threat, either expressed or implied, with the intent to place that person to-wit: Martha Grace McLaughlin, in reasonable fear of death or serious bodily harm, in violation of 13A-6-91 of the Code of Alabama . . ."  *Respondent's Exhibit A* at 6.  Under applicable Alabama law, a person commits the crime of aggravated stalking when he "intentionally and repeatedly follows or harasses another person and . . . makes a credible threat, either expressed or implied, with the intent to place that person in reasonable fear of death or serious bodily harm" and "whose conduct in doing so also violates any

issued for Smith on March 3, 1998, and he was committed to the Houston County Jail on March 6, 1998.

*Respondents' Exhibit A-2 - Memorandum Opinion on Direct Appeal* at 1-2 (citations to trial transcript and court record omitted) (footnote added).

With respect to its determination of the issues presented by Smith, the relevant portion of the opinion issued by Alabama Court of Criminal Appeals reads as follows:

### I.

Smith asserts that his conviction of aggravated stalking violated the prohibition against double jeopardy, because he had already been convicted in Dothan municipal court for harassment, harassing communications, and menacing.  Smith contends that the conduct used to support the charge of stalking included conduct used to support his prior misdemeanor convictions.

"[T]he test in determining whether the charges run afoul of the Double Jeopardy Clause is whether each crime contains a statutory element not contained in the other. *Blockburger v. United States,* 284 U.S. 299, 76 L.Ed. 306 (1932), 52 S.Ct. 180; *See also United States v. Dixon,* 509 U.S. 688, 125 L.Ed.2d 556 (1993), 113 S.Ct. 2849 (a plurality of the United States Supreme Court reaffirmed the *Blockburger* test as the sole criterion for judging double jeopardy claims); *Seritt v. State,* 647 So.2d 1 (Ala.Cr.App.), cert. denied, 647 So.2d 1 (Ala.Cr.App.1994).

*Williams v. State*, 710 So.2d 1276, 1321, (Ala.Cr.App. 1996), aff'd, 710 So.2d 1350 (Ala. 1997), cert. denied, 118 S.Ct. 2325, 141 L.Ed.2d 699, 66 U.S.L.W. 3789 (1998).  See also, *Bertram v. State*, 733 So.2d 921 (Ala.Cr.App. 1998); *Borden v. State*, 711 So.2d 498 (Ala.Cr.App. 1997), aff'd, 711 So.2d 506 (Ala. 1998), cert. denied, 119 S.Ct. 113, 142 L.Ed.2d 91, 67 U.S.L.W. 3232 (1998); *Leighton v. State*, 645 So.2d 354 (Ala.Cr.App. 1994).

---

court order or injunction . . ." *Ala.Code* § 13A-6-90(a) and § 13A-6-91(a).

* * *

 Smith's double jeopardy argument is premised on his previous municipal court convictions of harassment and harassing communications [in violation of the provisions of] Section 13A-11-8, Ala.Code 1975 . . .

* * *

 Smith had also previously been convicted in municipal court of menacing. Section 13A-6-23(a), Ala. Code 1975, states that "[a] person commits the crime of menacing if, by physical action, he intentionally places or attempts to place another person in fear of imminent serious physical injury."
 Employing a *Blockburger* analysis requires an examination of the offenses to ensure that each requires proof of a statutory element that the other does not. *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932). A conviction of aggravated stalking requires proof of the statutory elements of repeated following or harassment, and the violation of any court order or injunction. These elements are separate and distinct from those found in the harassment statute. A conviction of harassment requires proof of the alternative elements of physical contact with the victim, or the use of obscene or abusive language or gestures. These distinct elements are absent from the stalking statute. Therefore, Smith's previous convictions of harassment, do not bar his present conviction of aggravated stalking.
 Unlike aggravated stalking, a conviction of harassing communications does not require proof of the violation of a court order or of repeated conduct. A conviction of stalking does not require proof of written or electronic communications, necessary for a harassing communications conviction. Accordingly, Smith's previous conviction of harassing communications does not bar his present conviction of aggravated stalking.
 The statute proscribing the offense of menacing does not require the State to prove repeated conduct or the violation of [a] court order. Both must be proven to support a conviction of aggravated stalking. The stalking statute does not require the physical contact element found in the menacing statute. Hence, Smith's previous conviction of menacing does not bar his present conviction of aggravated stalking.
 Therefore, after applying the principles of *Blockburger*, it is apparent that the prohibition against double jeopardy was not violated in the present case.

The conviction of aggravated stalking required proof of an element not present in the other offenses for which Smith had been previously convicted. Each offense for which Smith was convicted in municipal court required proof of an element not present in the stalking statute. Accordingly, Smith did not suffer double jeopardy when he was convicted of aggravated stalking in circuit court, despite his contention that the charge encompassed conduct for which he was previously convicted in municipal court of harassment, harassing communications, and menacing.

Furthermore, the State's evidence enumerated sufficient additional incidents of stalking behavior that even if Smith's three municipal court convictions were excluded from consideration, the State nevertheless would have established a case of aggravated stalking.

Smith's municipal court convictions arose out of three incidents. On April 3, 1997, Smith was convicted in municipal court of harassment for the events that took place on March 29, 1997. Specifically, Smith forced himself into McLaughlin's apartment and held her overnight at knife point. On May 8, 1997, Smith was convicted of menacing for the March 29, 1997 incident, and he was convicted of harassing communications for a telephone call he made on April 1, 1997. On November 7, 1997, Smith was convicted of harassment for the incident that took place on October 3, 1997 when McLaughlin used a pay telephone to signal a co-worker to summon the police.

In addition to the conduct that led to these convictions, Smith carried on a pattern of behavior over the course of 1997 for which he was never arrested or convicted. The record revealed numerous telephone calls placed by Smith to McLaughlin at her place of employment. Despite repeated requests to stop, Smith continued to call McLaughlin at work, often employing a ruse to get her to answer the telephone. Unlike the telephone call Smith placed on April 1, 1997, which formed the basis of his municipal court conviction, Smith was never arrested or convicted of any offense relating to this series of harassing telephone calls.

McLaughlin testified about different occasions when Smith waited outside her place of employment, or appeared unexpectedly at her apartment late at night. Similarly, Smith was never arrested or convicted of any offense related to his climbing onto McLaughlin's balcony in the middle of the night on March 21, 1997. Although this activity took place before the issuance of a restraining order, it nonetheless illuminates the pattern of stalking McLaughlin was forced to endure, which continued after the restraining order was issued.

Smith was never criminally sanctioned for the many letters he sent McLaughlin from jail in violation of the municipal court's order that he not communicate with her. Likewise, Smith was never arrested or convicted of any offense for his threatening behavior when he threatened McLaughlin at a gas station on September 11, 1997. Despite Smith's assertion to the contrary, he was not "previously convicted and punished for each of the charges alleged by the state."

These incidents alone would have been sufficient to support Smith's conviction of aggravated stalking. Because Smith had not been previously convicted of any offense for these violations, the prohibition against double jeopardy could not act to bar his present conviction of aggravated stalking.

The only incidents for which Smith had been previously convicted occurred specifically on March 29, 1997, April 1, 1997, and October 3, 1997. The resulting municipal court convictions were unrelated to the multitude of stalking activities which Smith carried on over the course of 1997, and for which he was never criminally sanctioned. At most, the State's introduction of Smith's municipal court convictions merely served as evidence of specific incidents in a larger course of conduct constituting the offense of stalking. See *Culbreath v. State*, 667 So.2d 156 (Ala.Cr.App. 1995), abrogated on other grounds, *Hayes v. State*, 717 So.2d 30 (Ala.Cr.App. 1997).

Accordingly, even if this court went beyond the principles set forth in *Blockburger* and employed a more strenuous conduct-based analysis to determine if the prohibition against double jeopardy had been violated, we would nevertheless find that there was sufficient evidence to conclude that the conduct which gave rise to the present conviction was separate from the conduct that supported Smith's convictions in municipal court. Smith has not been punished twice for the same criminal transactions, and the prohibition against double jeopardy has not been violated.

## II.

Smith asserts that the trial court erred when it denied his motion for a judgment of acquittal and his motion for a new trial. Specifically, Smith argues that the State failed to present sufficient evidence to convict him of aggravated stalking because, he asserts, the State failed to prove that Smith was aware of the court order requiring him to refrain from contact with the victim. Smith contends that without such knowledge he could not have had the requisite intent to commit the offense of aggravated stalking. The State maintains that there was overwhelming circumstantial evidence from which

the jury could conclude that Smith was aware of the municipal court's order.

> "'In reviewing a conviction based on circumstantial evidence, this court must view that evidence in a light most favorable to the prosecution. The test to be applied is whether the jury might reasonably find that the evidence excluded every reasonable hypothesis except that of guilt; not whether such evidence excludes every reasonable hypothesis but guilt, but whether a jury might reasonably so conclude.'"

*Woods v. State*, 724 So.2d 40, 48 (Ala.Cr.App. 1998), quoting *Cumbo v. State*, 368 So.2d 871, 874 (Ala.Cr.App. 1978), cert. denied, 368 So.2d 877 (Ala. 1979). Circumstantial evidence must be given the same weight as direct evidence. *Jones v. State*, 572 So.2d 504, 507 (Ala.Cr.App. 1990); *Dooley v. State*, 575 So.2d 1191, 1196 (Ala.Cr.App. 1990); *Ward v. State*, 557 So.2d 848, 850 (Ala.Cr.App. 1990).

In the present case, the State's evidence demonstrated that as part of Smith's probation for his April 3, 1997, harassment conviction, Smith was ordered to "[n]ot assault, communicate with or be in the presence of Grace McLaughlin." The municipal court form recording this condition of probation indicated that Smith appeared in open court and "knowingly, voluntarily, and intelligently" entered a guilty plea to the harassment charge. McLaughlin's testimony confirmed that Smith was in court and pleaded guilty to the charges against him. The record shows that the municipal court's order that Smith refrain from contact with McLaughlin, was incorporated into Smith's May 8, 1997 convictions of harassing communications and menacing. The municipal court judge reiterated this order on August 7, 1997, when he wrote in the case action summary that Smith was "ordered to stay away from Grace McLaughlin." The jury could have reasonably inferred from this evidence that the municipal court judge apprised Smith of the conditions of his probation. This circumstantial evidence supported an inference that Smith was aware of the municipal court's order that he refrain from contact with McLaughlin.

The State also presented a number of letters Smith sent to McLaughlin while in jail indicating that he knew that he had been ordered to refrain from contacting McLaughlin. . . .

[The] statements by Smith [contained in these letters] created the reasonable inference that he was aware of the municipal court's order to

refrain from seeing McLaughlin.

* * *

Based on the evidence presented by the State, the jury could have reasonably concluded that Smith knew that there was a court order requiring him to refrain from contact with McLaughlin. The trial court did not err in denying Smith's motion for a judgment of acquittal and motion for a new trial on this basis.

### III.

Smith asserts that the trial court erred in denying his request for jury instructions on the lesser included offenses of menacing and harassment.

* * *

Our review of the record convinces us that the evidence did not support a theory of menacing or harassment. The testimony established that Smith engaged in a pattern of repeated conduct that took place between February and October of 1997. In addition to the isolated incidents for which Smith was convicted of harassment and menacing in municipal court, he also engaged in an on-going course of stalking behavior. Evidence of this long course of stalking was presented to the jury. McLaughlin testified about numerous harassing telephone calls. She also enumerated multiple occasions when Smith waited for her outside her apartment and place of business. Additionally, the record contains over 30 pages of letters Smith sent McLaughlin from jail after he had been ordered not to communicate with her.

The evidence in the present case did not support any reasonable theory that Smith's conduct was restricted to isolated incidents of menacing or harassment. When it is clear that there is no evidence tending to bring the offense within the definition of the lesser offense a court may properly refuse to charge on lesser included offenses. Such a refusal is also appropriate when, as here, the requested charge would have a tendency to mislead or confuse the jury. *Petway*, 690 So.2d at 533. The trial court did not err in refusing to instruct the jury on menacing and harassment. Jury charges on menacing and harassment were not supported by the evidence in the present case.

IV.

Smith asserts that the trial court erred when he was not allowed to question the victim about medical records that had been admitted into evidence by stipulation of the parties.

The record shows that during the presentation of his defense, Smith called the victim, Grace McLaughlin, as a defense witness.  McLaughlin had previously testified as a witness for the State.  During Smith's questioning of McLaughlin, he asked her about her use of prescription drugs:

> "A.  To the best of my knowledge, I had just answered your question in saying that if under the circumstances if a doctor prescribed me medicine, I would, in fact, take it if it was necessary.

> "Q.  Okay.  Ms. McLaughlin, since you came in this morning, you've been made aware of the fact that I have some medical records on you, haven't you?

> "A.  Yes, sir.

> "Q.   And you've been made aware of the fact that those medical records apparently show a good bit of narcotics –

> " ....

> "Q.  Ms. McLaughlin, are you telling the ladies and gentlemen of this jury that yesterday you didn't testify that you didn't regularly use narcotics?

> "A.  Yes, sir.

> "Q.  Okay.  And that is still the truth today; is that right?

> "A.   Are you asking me if I regularly use drugs outside of a doctor prescribing them to me?   I don't understand the question.

"Q.  I'm saying, even if a doctor prescribed you narcotic drugs, you use them every time they prescribe them, don't you?

"A.  If it was necessary, yes."

Smith then attempted to question McLaughlin on the contents of her medical records that were admitted into evidence by stipulation of the parties.  The State objected and the following exchange occurred:

"THE COURT:  Okay.  The records do speak for themselves. The jury can see the records.  I'm sure nobody disputes it. That why y'all stipulated to it; right?

"[Prosecutor]:  Right.

"THE COURT:  She doesn't dispute it, Mr. Mendheim (District Attorney) doesn't dispute it, you don't dispute it.  The records go in, and let them speak for themselves, and your objection is sustained.

"[Defense Counsel]:  I appreciate that, and I just need to make sure I'm following your Honor's Orders.  Are you saying I can't ask her questions about the other incidents where she was prescribed narcotics?

"THE COURT:  If its in those records, you can't.  Is it in those records?

"[Defense Counsel]:  Yes, sir, it's in these records.

"THE COURT:  Okay.  Sustained.  Nobody disputes them.  So, why ask questions about them?

"[Defense Counsel]:  Because yesterday, I think, she did dispute what is now in the records that we have.  And that is why I wanted to offer them, and that's why I want to ask her --

11

"THE COURT: Well, I think y'all stipulated to the fact that they are admissible, and even Mr. Mendheim stipulated to them. So, what's to dispute?

" ....

"THE COURT: I don't think there is any dispute from those particular records that she has taken drugs as those records reflect by a doctor. Nobody disputes that. So, you know, why get into all this stuff about -- The State has agreed to it, and you have agreed to it. The jury can see them. They can make whatever judgment they want to about it.

" ....

"THE COURT: The State has stipulated to the fact that they do not dispute that, in fact, she went to the doctor on those occasions and got prescribed drugs. They don't dispute that. This witness doesn't dispute it. So, why are we going through this?

"[Defense Counsel]: Because yesterday, she did dispute it before the records were here.

"THE COURT: Well, now they don't dispute it. You can argue that to the jury. Okay."

***

The trial court did not abuse its discretion regarding Smith's questioning of McLaughlin concerning stipulated medical records. Smith wished to examine McLaughlin concerning those records in order to demonstrate that the records contradicted her earlier statement denying her use of narcotics. In addition to attacking McLaughlin's credibility, the revelation that she was taking prescribed drugs had the potential to erode the jury's confidence in McLaughlin's ability to accurately remember the events of 1997. Nevertheless, as the trial court noted, the evidence that McLaughlin was taking prescription drugs was already before the jury in the form of

McLaughlin's testimony and her medical records.  The jury heard McLaughlin admit that she had taken prescription drugs.  Further, the jury was able to examine the records and determine for themselves if McLaughlin testified truthfully.  The jury was also able to rely on the medical records in making determinations about McLaughlin's ability to remember the events of 1997.

\* \* \*

. . . Any questioning of McLaughlin about the contents of the stipulated medical records would have been merely cumulative.  The jury was able to determine from the medical records themselves whether McLaughlin was credible.  The trial court did not err when Smith was not allowed to question the victim about medical records that had been admitted into evidence by stipulation of the parties.

Based on the foregoing, the judgment of the trial court is affirmed.

*Respondents' Exhibit A-2 - Memorandum Opinion on Direct Appeal* 2-10 (citations to  trial transcript, court record and appellant's brief omitted).  On April 27, 2001, the Alabama Supreme Court denied Smith's petition for writ of certiorari.  *Ex parte Smith*, 824 So.2d 88 (Ala. 2001).

In July of 2001, Smith filed a state post-conviction petition pursuant to Rule 32, Alabama Rules of Criminal Procedure.  On the standard form, Smith placed check marks beside the following grounds for a petition listed on the form: (i) the Constitution requires a new trial, a new sentence or other relief; (ii) the court was without jurisdiction to render judgment or to impose sentence; (iii) the sentence imposed exceeds the maximum authorized by law; and (iv) newly discovered facts exist which require that the conviction or sentence be vacated.  A brief submitted by Smith in support of this state petition raised

these claims for relief:

1.   Conviction obtained when petitioner was not allowed to properly and fully question Martha Grace McLaughlin and Mills Hornsby.

2.   Conviction obtained through a defective indictment because the indictment failed to state a time frame for the offense.

3.   Conviction obtained through failure to instruct the petitioner of probation conditions and knowledge of a restraining order.

4.   Conviction obtained through the refusal of the trial court to instruct the jury on lesser included offenses of harassment and menacing.

5.   Conviction obtained in violation of the protection against double jeopardy.

6.   Conviction obtained through violation of petitioner's constitutional rights protected under the First and Fourteenth Amendments.

7.   Conviction obtained through violation of right to a fair trial due to the prosecutor's misconduct in violating the rules of professional conduct through the solicitation of testimony regarding petitioner's criminal record and implication that letters to the victim contained threats.

8.   Conviction obtained in violation of the Ex Post Facto Clause as the sentence imposed represented an additional sentence for crimes on which petitioner had previously been convicted

14

and sentenced.[2]

On August 6, 2001, the trial court dismissed Smith's Rule 32 petition because the "[i]ssues raised by the petitioner were or could have been raised on direct appeal." *Respondents' Exhibit B* at 115. The petitioner appealed this decision. The Alabama Court of Criminal Appeals affirmed the denial of Smith's Rule 32 petition.

In addressing Smith's claims regarding (i) his limited ability to question the victim, (ii) the trial court's denial of the motion for judgment of acquittal and motion for new trial based on the State's failure to prove specific intent to violate a court order, and (iii) double jeopardy violations, the appellate court held that the trial court properly precluded these issues as they had been addressed adversely to the petitioner on direct appeal. *Respondents' Exhibit B-2 - Memorandum Opinion on Appeal of Rule 32 Petition* at 2-4. With respect to Smith's claim that the prosecutor's actions forced him to dismiss Mills Hornsby as a witness, the court determined that "[t]his issue was properly precluded pursuant to Rule 32.2(a)(5), for it could have been, but was not, presented on appeal. . . ." *Id.* at 2. The court further determined that the "circuit court could have properly precluded [the deficient indictment] claim pursuant to Rule 32.2(a)(2)" because Smith raised this claim in a motion to dismiss the indictment. *Id.* As for Smith's claims that (i) the trial court erred

---

[2]Although presented by Smith in terms of an ex post facto violation, it is clear that this claim alleges a violation of the prohibition against double jeopardy. On appeal from the trial court's denial of the Rule 32 petition, the Alabama Court of Criminal Appeals properly construed this claim as one alleging a violation of the Double Jeopardy Clause.

in failing to instruct the jury on lesser included offenses, (ii) his conviction violated the First and Fourteenth Amendments, and (iii) the actions of the prosecutor violated the rules of professional conduct, the Alabama Court of Criminal Appeals held that these issues were procedurally defaulted because Smith could have but did not raise such claims on direct appeal. *Id.* at 2-3. Additionally, the appellate court concluded that the issues by which a "check" mark appeared on the printed form provided no basis for relief as Smith failed to support these claims with specific facts nor did he present evidence that met requirements for newly discovered evidence. *Id.* at 4.

Smith filed this 28 U.S.C. § 2254 petition on November 4, 2002. In this federal habeas action, Smith presents the same eight claims which he raised in the brief filed in support of his Rule 32 petition.

Upon review of the § 2254 petition, the answers of the respondents, Smith's responses to the answers, and the opinions issued by the state courts, the court concludes that no evidentiary hearing is required and that the petition is due to be denied in accordance with the provisions of Rule 8(a), *Rules Governing Section 2254 Cases in United States District Courts*.

## II. DISCUSSION

### A. State Law Claims

To the extent that Smith's claims challenging his ability to cross examine material

witnesses and the trial court's failure to provide jury instructions on lesser included offenses are based on alleged violations of state law, the petitioner is entitled to no relief as a state court's interpretation of its own laws and rules provides no basis for federal habeas relief. *Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S.Ct. 475, 480 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) ("[F]ederal habeas corpus relief does not lie for errors of state law.").

## B. Claims Adjudicated by the State Courts

The petitioner's request for federal habeas relief is governed by 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act. *Price v. Vincent*, 538 U.S. 634, 638, 123 S.Ct. 1848, 1852 (2003) ("A habeas petitioner whose claim was adjudicated on the merits in state court is not entitled to relief in federal court unless he meets the requirements of 28 U.S.C. § 2254(d)."); *Williams v. Taylor*, 529 U.S. 362, 402, 120 S.Ct. 1495, 1518 (2000). Under the requisite provisions of 28 U.S.C. § 2254(d), with respect to a claim adjudicated on the merits in state court, federal habeas relief from a state court judgment may not be granted unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as

17

determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In *Williams*, 529 U.S. at 412-413 (2000), the Supreme Court held that:

Under the "contrary to" clause a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

The Court explained that habeas relief is appropriate when a petitioner demonstrates "that a decision by a state court is 'contrary to' . . . clearly established [Supreme Court] law if it 'applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.' *Williams v. Taylor*, 529 U.S. 362, 405-406, 120 S.Ct. 1495, 146 L.Ed. 2d 389 (2000)." *Price*, 538 U.S. at 640, 123 S.Ct. at 1853 (2003). Additionally, federal review in a habeas action "is limited to whether the state court's decision was objectively unreasonable in the light of clearly established federal law. *Williams,* [529 U.S. at 409],120 S.Ct. at 1521." *Hawkins v. Alabama*, 318 F.3d 1302, 1310 (11th Cir. 2003); *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001), citing *Williams, supra* ("[F]ederal habeas relief [is]

18

available under the 'unreasonable application' standard only if the state court's application of clearly established federal law was 'objectively unreasonable.'").  A federal district court is not to decide "the correctness *per se* . . . of the state court decision" but only the "objective reasonableness" of such decision. *Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001).  Moreover, "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Williams*, 529 U.S. at 410, 120 S.Ct. at 1522 (emphasis in original).  "Under § 2254(d)(1)'s 'unreasonable application' clause, . . . a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." 529 U.S. at 411, 120 S.Ct. at 1522.

Federal district courts are likewise directed to determine whether the state court based its findings on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).  A state court's determinations of fact shall be "presumed to be correct," and the habeas petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).  However, even when the state court addresses a question of law, this court is not authorized "to evaluate [a petitioner's] claim *de novo* rather than through the lens of § 2254(d)." *Price*, 538 U.S. at 639, 123 S.Ct. at 1852.  The

Supreme Court admonishes that such evaluation "exceeds the limits imposed on federal habeas review by 28 U.S.C. § 2254(d) . . ." 538 U.S. at 636, 123 S.Ct. at 1851.

With respect to Smith's assertion that the trial court erred in limiting his examination of the victim, his challenge to the sufficiency of the evidence based on the State's failure to prove his knowledge of a court order, his claim that the trial court erred in its refusal to instruct the jury on lesser included offenses, and the double jeopardy/ex post facto via double jeopardy claims, the record establishes that such claims entitle the petitioner to no relief in this court as the Alabama Court of Criminal Appeals properly adjudicated these claims on the merits on direct appeal.[3]  *Williams*, 529 U.S. at 404-405, 120 S.Ct. at 1518- 1523 (2000).  Specifically, the decision of the Alabama Court of Criminal Appeals on these issues was not contrary to or an unreasonable application of federal law nor an unreasonable determination of the facts in light of the evidence presented to the state courts.

On direct appeal, the Alabama Court of Criminal Appeals concluded that "after applying the principles of *Blockburger*, it is apparent that the prohibition against double jeopardy was not violated in the present case."  *Respondents' Exhibit A-2 - Memorandum Opinion on Direct Appeal* at 4.  In addressing the petitioner's attack on the sufficiency of

---

[3]As previously noted, Smith's ex post facto claim alleged that the trial court imposed a life sentence upon him for aggravated stalking in violation of double jeopardy.  The petitioner first raised his claim in terms of an ex post facto violation in his Rule 32 petition.  On appeal from the denial of this petition, the Alabama Court of Criminal Appeals determined that "[t]his claim did not present a possible ex post fact situation, but a possible double jeopardy issue which" had been addressed in favor of the State on direct appeal.

the evidence, the appellate court determined that in April of 1997 the municipal court "ordered [Smith] to '[n]ot assault, communicate with or be in the presence of Grace McLaughlin.' . . . The record shows that the municipal court's order that Smith refrain from contact with McLaughlin, was incorporated into Smith's May 8, 1997 convictions of harassing communications and menacing. The municipal court judge reiterated this order on August 7, 1997, when he wrote in the case action summary that Smith was 'ordered to stay away from Grace McLaughlin.' The jury could have reasonably inferred from this evidence that the municipal court judge apprised Smith of the conditions of his probation. This circumstantial evidence supported an inference that Smith was aware of the municipal court's order that he refrain from contact with McLaughlin." *Id.* at 5-6 (citations to trial transcript and court record omitted). Additionally, the court noted that letters and statements of Smith "created the reasonable inference that he was aware of the municipal court's order to refrain from seeing McLaughlin." *Id.* at 6. As for the claim of entitlement to instructions on lesser included offenses, the court held "that the evidence did not support a theory of menacing or harassment" due to Smith's "on-going course of stalking behavior" and his continued communication with the victim "after he had been ordered not to communicate with her." *Id.* at 7. Finally, with respect to Smith's claim that the trial court improperly denied him an opportunity to question the victim about her use of prescription drugs as detailed in the medical records admitted into evidence by stipulation of the parties, the appellate court recounted relevant portions of the transcript and reasoned as

follows:

> The trial court did not abuse its discretion regarding Smith's questioning of McLaughlin concerning stipulated medical records. Smith wished to examine McLaughlin concerning those records in order to demonstrate that the records contradicted her earlier statement denying her use of narcotics. In addition to attacking McLaughlin's credibility, the revelation that she was taking prescribed drugs had the potential to erode the jury's confidence in McLaughlin's ability to accurately remember the events of 1997. Nevertheless, as the trial court noted, the evidence that McLaughlin was taking prescription drugs was already before the jury in the form of McLaughlin's testimony and her medical records. The jury heard McLaughlin admit that she had taken prescription drugs. Further, the jury was able to examine the records and determine for themselves if McLaughlin testified truthfully. The jury was also able to rely on the medical records in making determinations about McLaughlin's ability to remember the events of 1997.

> * * *

> . . . Any questioning of McLaughlin about the contents of the stipulated medical records would have been merely cumulative. The jury was able to determine from the medical records themselves whether McLaughlin was credible. The trial court did not err when Smith was not allowed to question the victim about medical records that had been admitted into evidence by stipulation of the parties.

*Respondents' Exhibit A-2 - Memorandum Opinion on Direct Appeal* at 9-10. The Alabama Supreme Court denied Smith's petition for writ of certiorari. This Court must therefore review the instant claims for habeas corpus relief in accordance with the directives contained in 28 U.S.C. § 2254(d)(1) and (2). *Price*, 538 U.S. at 638-639, 123 S.Ct. at 1852 (2003); *Williams*, 529 U.S. at 402, 120 S.Ct. at 1518.

In refusing Smith relief on his claims, the Alabama Court of Criminal Appeals did not apply "a rule that contradicts the governing law set forth in [Supreme Court] cases" nor did the state court "confront[] a set of facts . . . materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrive[] at a result different from [Supreme Court] precedent." *Williams*, 529 U.S. at 405-406, 120 S.Ct. 1519-1520.  An assessment of whether the state court's denial of Smith's claims "resulted in a decision that . . . involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" is therefore warranted.  28 U.S.C. § 2254(d)(1).  In so doing, this Court's inquiry is limited to "whether the state court's application of clearly established federal law was objectively reasonable." *Williams*, 529 U.S. at 409, 120 S.Ct. at 1521.  Upon thorough review of the record in this case, it is clear that the state appellate court's rejection of Smith's claims was objectively reasonable.  The decision likewise constituted a reasonable determination of the facts in light of the evidence presented.  *See* 28 U.S.C. § 2254(d)(2).  Consequently, Smith is due no relief from this court on those claims decided adversely to him on the merits by the Alabama Court of Criminal Appeals.

### C.  Procedurally Defaulted Claims

The respondents argue that Smith's claim regarding his decision to dismiss Mills

Hornsby as a witness, his challenge to the indictment, the issue involving an alleged violation of the First/Fourteenth Amendments, and his assertion of prosecutorial misconduct are procedurally defaulted due to Smith's failure to present these claims to the state courts in accordance with the state's procedural rules. *See Teague v. Lane*, 489 U.S. 288 (1989); *Brownlee v. Haley*, 306 F.3d 1043, 1065 (11th Cir. 2002); *Holladay v. Haley*, 209 F.3d 1243, 1254 n. 9 (11th Cir.), *cert denied*, 531 U.S. 1017 (2000); *Collier v. Jones*, 901 F.2d 770, 773 (11th Cir. 1990). In support of this argument, the respondents maintain that the last state court to render judgment on the Hornsby, First/Fourteenth Amendment and prosecutorial misconduct claims determined that these claims were procedurally defaulted under applicable state rules. *See Atkins v. Singletary*, 965 F.2d 952, 955 (11th Cir. 1992) (citations omitted) ("Federal review of a petitioner's claim is barred by the procedural-default doctrine if the last state court to review the claim states clearly and expressly that its judgment rests on a procedural bar, and that bar provides an adequate and independent state ground for denying relief."). Specifically, on appeal from the denial of his Rule 32 petition, the Alabama Court of Criminal Appeals determined that these claims were procedurally defaulted due to Smith's failure to raise them on direct appeal. *Respondents' Exhibit B-2 - Memorandum Opinion on Appeal of Rule 32 Petition* at 2-3. With respect to Smith's challenge to the indictment, the respondents argue that this claim is procedurally barred from review because the petitioner failed to raise the claim on direct

24

appeal.

This court may reach the merits of Smith's procedurally defaulted claims only if the petitioner shows either (1) cause for the procedural default and actual prejudice arising out of the violation of federal law, *Coleman v. Thompson*, 501 U.S. 722 (1991), or (2) a resulting fundamental miscarriage of justice if the federal court does not consider the merits of the claims. *Schlup v. Delo*, 513 U.S. 298, 320 (1995).

The court has thoroughly reviewed the responses submitted by the petitioner. In these documents, Smith has demonstrated neither cause for his failure to present his federal habeas claims to the state courts in compliance with applicable procedural rules nor the existence of actual prejudice emanating from infringement of federal law. Nevertheless, this court may still reach the merits of his defaulted claims in order to prevent a fundamental miscarriage of justice. In an effort to meet this exception to the procedural default bar, Smith asserts that the violations of his constitutional rights probably resulted in his conviction for aggravated stalking despite his actual innocence. *See Petitioner's April 29, 2003 Response - Court Doc. No. 25* at 13.

The miscarriage of justice standard is directly linked to innocence. *Schlup v. Delo*, 513 U.S. 298, 321 (1995). Innocence is not an independent claim; rather, it is the "gateway" through which a petitioner must pass before a court may consider constitutional claims which are defaulted. *Id.* at 315. This exception applies where a petitioner establishes that

"a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986); *Schlup v. Delo*, *supra*. "To establish actual innocence, [a habeas petitioner] must demonstrate that . . . 'it is more likely than not that no reasonable juror would have convicted him.' *Schlup v. Delo*, 513 U.S. 298, 327-328, 115 S.Ct. 851, 867-868, 130 L.Ed.2d 808 (1995)." *Bousley v. United States,* 523 U.S. 614, 623 (1998). "It is important to note in this regard that 'actual innocence' means factual innocence, not mere legal insufficiency. *See Sawyer v. Whitley*, 505 U.S. 333, 339, 112 S.Ct. 2514, 2518-2519, 120 L.Ed.2d 269 (1992)." *Bousley*, 523 U.S. at 623-624.

    *Schlup* observes that

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare. . . . To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial.

513 U.S. at 324.

    Smith has failed to make the requisite showing of actual innocence. He has presented no evidence which satisfies the standard set forth in *Schlup*. Consequently, Smith's procedurally defaulted claims are foreclosed from federal habeas review.

## III. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the petition for habeas corpus relief filed by Curtis Ray Smith be denied and that this case be dismissed with prejudice.

It is further

ORDERED that on or before August 15, 2005 the parties may file objections to the Recommendation.   Any objections filed shall specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting.   Frivolous, conclusive or general objections will not be considered by the District Court.   The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.   *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).   *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).   *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

DONE, this 2nd day of August, 2005.


/s/ Susan Russ Walker
SUSAN RUSS WALKER
UNITED STATES MAGISTRATE JUDGE